# UNITED  STATES  DISTRICT  COURT

# SOUTHERN  DISTRICT  OF  GEORGIA

## SAVANNAH DIVISION

| | | |
|---|---|---|
| IVONNE R. MCGEE and DARRYL I. MCGEE, also known as DARRYL L. MCGEE, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CV416-241 |
| CITIMORTGAGE , INC., and SHAPIRO, PENDERGAST & HASTY LLP., | ) ) ) ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Contending that *pro se* plaintiffs Ivonne and Darryl McGee have failed to state lender liability claims against it,[1] defendant CitiMortgage, Inc. (CMI) moves under Fed. R. Civ. P. 12(b)(6) to dismiss their case with prejudice.  Doc. 16.  Plaintiffs oppose.  Doc. 19.  They also named as a defendant Shapiro, Pendergast & Hasty LLP (SPH), but apparently never served it, *see* doc. 5 (SPH's "Notice of Special Appearance").

---

[1]   The primary claims are premised on the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692e and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et. seq.*  Doc. 1-1 at 4.

# I.  GOVERNING STANDARDS

## A.  FED. R. CIV. P. 12(b)(6).

A Complaint "must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a). When the Complaint is challenged under Rule 12(b)(6), the plaintiff must convince the court that his Complaint contains sufficient factual matter, which, accepted as true, states a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Labels and conclusions won't do; there must be enough to support a reasonable inference that the defendant is liable for the alleged wrongdoing.  *Evans v. Georgia Regional Hosp.*, ___ F.3d ___, 2017 WL 943925 at * 4 (11th Cir. Mar. 10, 2017); *Ditto v. JPMorgan Chase Bank, N.A.*, ___ F. Supp. 3d ___, 2017 WL 213969 at * 1 (S.D. Fla. Jan. 17, 2017).

CMI wants this Court to dismiss a Complaint bearing attached loan-based documents.  Ordinarily, matters outside the pleadings aren't considered on Rule 12(b)(6) dismissal motions, *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997), but a "pleading" includes attached written documents, Fed. R. Civ. P. 10(c), so a motion to dismiss will not be converted to a motion for summary

judgment if the documents are undisputed and central to the plaintiff's claim. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Miranda v. Ocwen Loan Servicing, LLC*, 148 F. Supp. 3d 1349, 1353 (S.D. Fla. 2015). A document is "undisputed" if its authenticity is not challenged. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). And "central" means the plaintiff offered the document to prove his case. *Lockwood v. Beasley*, 211 F. App'x 873, 877 (11th Cir. 2006); *Miranda*, 148 F. Supp. 3d at 1353. In this case the plaintiffs included documents that are undisputed and central to their claims. Hence, they will be considered here.[2]

## B. FDCPA

"The FDCPA prohibits a 'debt collector' from using a 'false, deceptive, or misleading representation or means in connection with the collection of any debt.' 15 U.S.C. § 1692e." *Reese v. Ellis, Painter,*

---

[2] "Courts deciding a 12(b)(6) motion to dismiss may also consider items appearing in the record of the case. *Watson v. Bally Mfg. Corp.*, 844 F. Supp. 1533, 1535 n.1 (S.D. Fla. 1993), aff'd, 84 F.3d 438 (11th Cir. 1996)." *Stewart v. Bureaus Investment Group, LLC*, 2015 WL 7572312 at * 19 (M.D. Ala. Nov. 24, 2015).

Also, plaintiffs' *pro se* status requires the Court to apply a "liberal construction" gloss on the already-plaintiff-friendly review framework. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (quotes and cites omitted); *Evans*, 2017 WL 943925 at * 3; *cf.* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice.").

*Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012).   A sampling of the FDCPA's prohibitions:

> (2) The false representation of --
>
> > (A) the character, amount, or legal status of any debt; or
> >
> > (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
>
> \*   \*   \*   \*
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> \*   \*   \*   \*
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(2), (5) & (10).

To state an FDCPA claim,

> one need only show that: (1) plaintiff has been the object of collection activity arising from a consumer debt, (2) the defendant collecting the "debt" is a "debt collector" as defined in the Act, and (3) the defendant has engaged in any act or omission in violation of the prohibitions or requirements of the Act.   *E.g., Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2011); *Frost v. Resurgent Capital Servs., L.P.*, No. 15-03987, 2016 WL 3479087, at \*2 (N.D. Cal. June 27, 2016).   "Under the FDCPA, the term 'debt collector' means '[1] any person who uses any instrumentality of interstate commerce or the mails in any

4

business the principal purpose of which is the collection of any debts, or [2] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.'" *Gold v. Midland Credit Mgmt., Inc.*, 82 F. Supp. 3d 1064, 1070 (N.D. Cal. 2015) (citing 15 U.S.C. § 1692a(6)).

*Garcia v. Creditors Specialty Service, Inc*., 2016 WL 6778681 at * 2 (N.D. Cal. Nov. 16, 2016). To that end, "[o]bligations to pay a residential mortgage qualify as 'debt' for purposes of the FDCPA." *Pinson v. JP Morgan Chase Bank, Nat'l Ass'n*, 646 F. App'x 812, 814 (11th Cir. 2016).

"Unlike debt collectors, creditors typically are not subject to the FDCPA." *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1313 (11th Cir. 2015). And their "assignees are in general exempt -- that is, they are not held to be debt collectors -- if they acquired the debt *before* it went into default. . . ." Ann., *What Constitutes "Debt Collector" for Purposes of Fair Debt Collection Practices Act (15 U.S.C.A. § 1692a(6)*, 173 A.L.R. Fed. 223 § 2[a] (Supp. 2017) (emphasis added).

To summarize, "'a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.' *Perry v. Stewart Title Co*., 756 F.2d 1197, 1208 (5th Cir. 1985) (citations omitted)." *Belin v. Litton Loan Servicing, LP*, 2006 WL 1992410 at * 2

(M.D. Fla. July 14, 2006).³  An FDCPA plaintiff, then, must plead facts showing that the defendant not only is a debt collector, but also "has engaged in an[] act or omission in violation of the prohibitions or requirements of the Act."  *Garcia,* 2016 WL 6778681 at * 2.

## C. RESPA

RESPA contemplates that mortgage loan debtors are entitled to know their loan balance, the legitimacy of specific fees and charges, who owns their debt, and so forth.  Borrowers therefore can send their lenders a "Request for Information" (RFI) or "Qualified Written Request" (QWR)⁴ about their debt and expect a timely, honest response.  *Walker v. Branch Banking and Trust Company,* ___ F. Supp. 3d ___, 2017 WL 747875 at * 1 (S.D. Fla. Feb. 23, 2017).  If no response is forthcoming, borrowers can sue.  But

---

³  A law firm can be an FDCPA debt collector.  *Reese*, 678 F.3d. at 1218 ("a party can qualify as a 'debt collector' either by using an 'instrumentality of interstate commerce or the mails' in operating a business that has the principal purpose of collecting debts or by 'regularly' attempting to collect debts.) (quoting 15 U.S.C. § 1692a(6)); 2 CONSUMER LAW SALES PRACTICES AND CREDIT REGULATION § 624.30 (Sept. 2016) ("The term 'debt collector' applies to a lawyer who regularly, through litigation, tries to collect consumer debts.").

⁴  The terms are used interchangeably.  *See Ditto*, 2017 WL 213969 at *2 ("Section 1024.36 states that a 'qualified written request [QWR] that requests information relating to the servicing of the mortgage loan is a request for information [RFI] for purposes of this section. . . .' 12 C.F.R. § 1024.36(a).").

[t]o state a RESPA claim for failure to respond to a qualified written request ("QWR"), a plaintiff must allege: "(1) the defendant is a *loan servicer* under the statute; (2) the plaintiff sent a [QWR] consistent with the requirements of the statute; (3) the defendant failed to respond adequately within the statutorily required days; and (4) the plaintiff has suffered actual or statutory damages." *Correa v. BAC Home Loans Serv. LP*, No. 6:11–cv–1197-Orl-22DAB, 2012 WL 1176701, at *6 (M.D. Fla. Apr. 9, 2012) (citing *Frazile v. EMC Mortg. Corp.*, 382 Fed. Appx. 833, 836 (11th Cir. 2010)).

*Miranda*, 148 F. Supp. 3d at 1354 (emphasis added); *see also Ditto*, 2017 WL 213969 at *2 (a request for loan modification information does not relate to the "servicing" of mortgage loan and therefore does not trigger a mortgage loan servicer's RESPA obligation).[5]

Taking too long to respond to a QWR can support a RESPA claim against a lender.[6] *See Patton v. Ocwen Loan Servicing, LLC*, 2011 WL

---

[5]   Lenders (or servicers) face "actual damages, and statutory damages where a pattern or practice of noncompliance is established. *See* 12 U.S.C. § 2605(f)(1)." *Walker*, 2017 WL 747875 at * 3; *see also id.* at * 4 (RESPA claim stated, where mortgage lender's RFI response failed to supply plaintiff borrowers "a statement of [Defendant's] reasons" responsive to Plaintiffs' specific inquiry."). But RESPA plaintiffs must allege damages. *Frazile v. EMC Mortg. Corp.*, 382 F. App'x 833, 836 (11th Cir. 2010).

[6]   As recently explained, there are different time limits:

RESPA obligates furnishers of information to promptly (not later than 30 days after receipt of a qualified written request ("QWR")): (1) "make appropriate corrections in the account of the borrower" 12 U.S.C. § 2605(e)(2)(A); or (2) "after conducting an investigation, provide the borrower with a written explanation or clarification" ("RESPA Response"), which provides either -- (a) "a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer" (*id.* § 2605(e)(2)(B)(i));

3236026 at * 4 (M.D. Fla. July 28, 2011).   Conversely, taking too long to act on RESPA rights can be fatal.   *Toscione v. Wells Fargo Home Mortg.*, 2013 WL 10721711 at * 1 (M.D. Fla. Sept. 18, 2013) (no RESPA claim stated "because at the time the letter was written, Plaintiff's mortgage had been foreclosed and sold at a judicial sale, and [mortgage lender] was therefore not 'servicing' the loan within the meaning of 12 U.S.C. § 2605(e)(1)(A).") (footnote omitted); *see also id.* (collecting similar cases), cited in *Buyea v. Select Portfolio Servicing, Inc.*, 2016 WL 5904502 at * 3 (S.D. Fla. Oct. 11, 2016).

To summarize, a RESPA plaintiff must allege that, *before* his loan was foreclosed: (a) his lender received his QWR; (b) it relates to servicing of his mortgage loan; (c) the lender failed to respond adequately; and

---

or (b) "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer" (id. § 2605(e)(2)(B)(ii)).   In addition, for 60 days after receipt of a QWR that relates "to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment . . . to any [Credit Reporting Agency]." *See id.* § 2605(e) (3).

*Garrison v. Caliber Home Loans, Inc.*, ___ F.Supp. 3d___, 2017 WL 89001 at * 8 (M.D. Fla. Jan. 10, 2017).   On top of that, a borrower obviously pays a price if he waits until *after* foreclosure to send a QWR -- especially if the foreclosure of the lender's lien extinguishes the debt.   With no debt, lenders are free to argue that they are no longer servicing the debt and thus, *debt*-servicing statutes like RESPA no longer apply.

(d) plaintiff is entitled to actual or statutory damages.  *Walker*, 2017 WL 747875 at * 3.

### D. Fraud

A fraud plaintiff

> "must state with particularity the circumstances constituting fraud or mistake." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).  Under [Fed. R. Civ. P.] 9(b), a plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Id*.

*Fortson v. Best Rate Funding, Corp.*, 602 F. App'x 479, 482 (11th Cir. 2015).  This is a heightened pleading standard.  *Desouza v. Federal Home Mortg. Corp.*, 572 F. App'x 719, 722 (11th Cir. 2014).  It "ensures that the defendants know the "precise misconduct with which they are charged and protect[s] defendants against spurious charges of immoral and fraudulent behavior." *Id*. (quotes and cite omitted); *see also Metellus v. Bank of America, N.A.*, 2016 WL 7985330 at * 4 (M.D. Ga. Mar. 28, 2016) ("Plaintiff's fraud claim fails to comply with the heightened pleading standard under Rule 9(b).").

Finally, a plaintiff must plead and ultimately show justifiable reliance on the fraudulent representation. *Henley v. Nationstar*

*Mortgage, LLC*, 2016 WL 4411513 at * 7 (N.D. Ga. Jan. 25, 2016). It follows that, since "[f]raud cannot consist of mere broken promises, expressions of opinion, unfulfilled predictions or erroneous conjecture as to future events," *Koncul Enters., Inc. v. Fleet Fin., Inc.*, 279 Ga. App. 39, 42 (2006) (quotes and cite omitted), merely pointing to a lender's failure to obey a notice or disclosure statute/regulation also won't make the grade.

### E. Wrongful Foreclosure

> To prevail on a wrongful foreclosure claim under Georgia law, the plaintiff must establish that the defendant violated Georgia's foreclosure statutes. *McCarter v. Bankers Trust Co*., 247 Ga. App. 129, 543 S.E.2d 755, 758 (2000). Under O.C.G.A. § 44-14-162.2(a), a foreclosure "notice shall be in writing and shall be sent . . . to the property address or to such other address as the debtor may designate by written notice to the secured creditor." O.C.G.A. § 44-14-162.2(a).

*Desouza*, 572 F. App'x at 722.

## II. ANALYSIS

### A. FDCPA

The McGees executed a 1997 Deed to Secure Debt to Associates Financial Services of America (AFSA) for a mortgage loan on their Georgia home. Doc. 1-1 at 3, 19. At some point in time, AFSA merged with and came to be known as CitiFinancial Servicing, LLC. *Id*. at 22.

10

CitiFinancial Servicing, LLC, in turn, assigned the McGee's Deed to Secure Debt to CMI on July 22, 2015. *Id*. Attached to the Complaint is an October 14, *2013* letter from "CitiMortgage" (perhaps a CMI d/b/a?) declaring the plaintiffs' debt in default: "We are writing to inform you [that] we are returning your recent payment. . . .  We are unable to process your payment(s). . . . Your loan matured on 08/01/13." *Id*. at 24. Construing the Complaint liberally, the McGees were in default as of 2013 and CMI thus accelerated the loan (it would accept only "the remaining balance in full"), though it did not state what that amount was. *Id*.

Also under that liberal construction (the Court otherwise agrees with CMI that the Complaint suffers from poor drafting), ASFA had been using CMI (which, in turn, used "CitiMortgage") as a servicing agent until ASFA outright assigned the loan to CMI on July 22, 2015. Doc. 1-1 at 3, 22. So it was CMI that, in 2015, wound up as the assignee of plaintiffs' *defaulted* debt before it foreclosed on their home. *See id*. at 30 (SPH's July 19, 2016 letter to the plaintiffs informing them, in response to their July 13, 2016-postmarked, debt-validation inquiry letter, that CMI had foreclosed on their property on July 5, 2016).

11

Plaintiffs have thus pled that CMI did not own the subject debt until *after* it went into default (*i.e.,* it acquired it via assignment in 2015, but it was in default in 2013).  That supports their claim that CMI was an FDCPA "debt collector."  Hence, the Court rejects CMI's contrary dismissal argument.[7]  *Babalola v. HSBC Bank, USA, N.A.*, 324 Ga.App. 750, 753-54 (2013).

But again, plaintiffs must also allege that CMI *violated* the FDCPA. Their Complaint's attached documents, however, neutralize that part of their FDCPA claim.  Their "debt inquiry" letter was dated July 2, 2016 but was not postmarked until July 13, 2016, doc. 1-1 at 30, which is *after* the foreclosure.  On July 19, 2016, SPH informed them that on July 5, 2016, CMI foreclosed on and sold their home.  *Id.* at 4, 30.  The gravamen of plaintiffs' Complaint: "To date Plaintiff's [sic] have never received proper validation of debt as required by the Fair Debt Collection Practices Act and the Real Estate Settlement Procedures Act."  Doc. 1-1

---

[7]  Incidentally, the plaintiffs seem to be making some sort of hay by alleging that an "allonge" on their deed directed "payments to Citifinancial, Inc."  Doc. 1-1 at 3.  This is a non-issue.  A home mortgage security deed holder can exercise the deed's power of sale even if he does not also hold the underlying promissory note.  *White v. Bank of America Bank, N.A.*, 597 F. App'x 1015, 1019 (11th Cir. 2014); *Williamson v. Bank of America, N.A.*, 2015 WL 11517083 at * 7 (N.D. Ga. June 8, 2015).

at 4.  In fact, "[d]efendant never mailed an Acceleration of Debt letter." *Id.*

Setting aside the fact that plaintiffs have conflated FDCPA and RESPA claims (they essentially claim to have sent CMI a RESPA-QWR and don't like SPH's response), both FDCPA and RESPA claims ride on the existence of a debt.  Yet, plaintiffs' own documents show that their July 13, 2016-postmarked letter concerned a debt that no longer existed due to the July 5, 2016 foreclosure.  Since their debt was already extinguished by July 13th, CMI was no longer servicing/collecting it as of that date.  Hence, their FDCPA claim fails.

## B. RESPA

The same facts doom plaintiffs' RESPA claim.  *Toscione*, 2013 WL 10721711 at * 1.  CMI additionally argues that the plaintiffs' July 13, 2016 letter to CMI's law firm, SPH, fails to support their belief that the debt was erroneous or that there was some error in the servicing of the loan.  Doc. 17 at 11; *see also* doc. 1-1 at 26-28 (plaintiffs' letter).  Put another way, it insists that their letter was just a generic, "validate this debt," stall-tactic letter.  Hence, CMI contends, it fails to qualify as a QWR, which further impales plaintiffs' RESPA claim.  Id. at 11-12.  CMI

13

is correct, and plaintiffs RESPA claim therefore fails on these additional grounds.[8]   Too, plaintiffs make no claim that SPH's response letter is fraudulent, misleading, incomplete, or untimely -- a fact that further negates their RESPA claim.

## C. Wrongful Foreclosure

"'In Georgia, a plaintiff asserting a claim of wrongful foreclosure must establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages.' *Racette v. Bank of Am., N.A.*, 318 Ga. App. 171, 174, 733 S.E.2d 457 (2012) (internal quotation marks omitted)." *Chen v. Wells Fargo Bank, N.A.*, 2014 WL 806916 at *2 (N.D. Ga. Feb. 27, 2014); *see Metellus*, 2016 WL 7985330 at * 5.

---

[8]   "[It]t is not sufficient for a plaintiff to allege that a letter sent to a servicer merely requested information about the loan in general; the letter must request information specifically about the servicing of the loan in order to qualify as a QWR." *Jones v. Vericrest Fin., Inc.*, 2011 WL 7025915 at * 17 (N.D. Ga. Dec. 7, 2011); *see also Hintz v. JPMorgan Chase Bank, N.A.*, 2011 WL 579339 at * 8 (D. Minn. Feb. 8, 2011) ("the letters were not QWRs because Plaintiffs did not identify purported errors in their account or ask questions related to Chase's servicing of their loan," and because "Plaintiffs' letters had no relation to Chase's receipt or application of their payments"); *Marsh v. BAC Home Loans Servicing, LP*, 2011 WL 1196415 at *8 (M.D. Fla. March 29, 2011) ("The Court has reviewed the notice sent by plaintiffs and agrees with BAC.  Nothing in the notice indicates that there was a problem with the servicing of the loan (*e.g.*, the way BAC received plaintiffs' scheduled periodic payments due under the loan).").

Often a borrower will allege that he was surprised by the foreclosure -- because he failed to receive notice of it. He thus can invoke the notice statute, which requires notice "no later than 30 days before the date of the proposed foreclosure," O.C.G.A. § 44-14-162.2(a) but "shall [also] include the name, address, and telephone number of the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor." *Id.*, quoted in *Chen*, 2014 WL 806916 at *2; *see also Roylston v. Bank of America, N.A.*, 290 Ga. App. 556, 559 (2008) ("[w]here a foreclosing creditor fails to comply with the statutory duty to provide notice of sale to the debtor in accordance with O.C.G.A. § 44–14–162 *et seq.*, the debtor may either seek to set aside the foreclosure or sue for damages for the tort of wrongful foreclosure") (cite omitted).

The plaintiffs allege that when CMI declared them in default in 2013, it offered to "make payment arrangements" with them if they could not pay the balance in full. However, when plaintiffs contacted CMI to do just that (they never explain, however, why they waited until July, 2016 to do so, and in a letter postmarked *after* the foreclosure), CMI

15

"failed to make payment arrangements with the Plaintiffs."[9]  Doc. 1-1 at 4.  Plaintiffs (again, with their July 13, 2016-postmarked letter) insist that they contacted CMI's law firm, SPH, "in regards to the balloon payment claimed was due, but to no avail."  *Id.*

The plaintiffs' factual pleadings on CMI's alleged wrongdoing boil down to this: "Instead of validating the debt [SPH] informed [plaintiffs] that the[ir] house was sold on July 5, 2016."  Doc. 1-1 at 4.  Further: Because CMI and SPH to date have failed to document the debt, much less provide them with "an Acceleration of Debt letter," "[d]efendants knowingly, willfully and wantonly acted in bad faith . . . in an attempt to perpetrate a fraud, and wrongfully foreclose upon subject real property." *Id.*  In other words, the failure to timely notify plaintiffs of the foreclosure *and* say what they owed rendered CMI's foreclosure tortious. Plaintiffs want money damages and equitable relief (to set aside the foreclosure).  Doc. 1-1 at 15.

---

[9]  They do not plead facts to explain why they waited *years* before taking any further steps to address their arrearage.  They also ignore what CMI has super-illuminated: That their "debt-validation" letter was not postmarked until *after* the foreclosure. This strongly suggests manipulation -- that plaintiffs knew the foreclosure walls were closing in and decided to simply gum up the works with a generic letter demanding that everything about the loan be "proven" and "documented" -- all to enable the lobbing of "noncompliance" lender-liability claims.

16

This claim fails.  True, there is a "tort of wrongful foreclosure, *see Racette v. Bank of Am.*, 318 Ga. App. 171, 733 S.E.2d 457, 462 (2012)," *Sibley v. National City Mortg. Co.*, 560 F. App'x 825, 827 (11th Cir. 2014), but one must allege facts showing that the foreclosing party owed a legal duty and breached it, causing damages.  The McGees have adequately pled that the foreclosing party (CMI) owed them notice (that it would foreclose) and failed them on that score.  But to set aside a foreclosure sale (hence, to grant their claim for equitable relief) they must also allege, in non-conclusory terms, a "causal connection between the breach of that duty and the injury [they] sustained, and damages." *Racette*, 318 Ga. App. at 174.  A typical wrongful foreclosure claim arises where the lender mishandled the foreclosure sale and fetched an unfairly low price.  *Babalola,* 324 Ga. App. at 754.   The price spread is the damages claim.

Here, the plaintiffs complain of no notice and that CMI would not try to work things out with them.  That latter omission is not a violation, but merely a decision to write off a loan and exercise a contractual right (there is no legal duty to re-negotiate a mortgage loan).  The former (CMI's failure to provide timely notice) *is* actionable, but

"even where a borrower has established duty and breach of duty, it still needs to show a causal connection between the defective notice and the alleged injury." *Heritage Creek Development Corp. v. Colonial Bank*, 268 Ga. App. 369, 371, 601 S.E.2d 842 (2004); *see also Calhoun v. First Nat. Bank v. Dickens*, 264 Ga. 285, 286, 443 S.E.2d 837 (1994) ("The bank's failure to provide proper notice constituted a breach of [a] duty . . . [h]aving established duty and breach, however . . . [the plaintiff] still needed to show a causal connection between the lack of notice and the alleged injury."). The Plaintiff has failed to allege "how the end result would have been different" if she had received a statutorily sufficient notice of foreclosure. *Id.* at 372, 443 S.E.2d 837.

*Chen*, 2014 WL 806916 at *2 (footnote omitted).

The McGees therefore must plead facts showing that they would have cured the mortgage debt's arrearage had they received proper notice. *Chen*, 2014 WL 806916 at *3 ("Georgia courts routinely require plaintiffs to make sufficient tender before they may have a foreclosure sale set aside due to an alleged defect in the foreclosure process.").[10] Alas, they haven't pled or even attempted tender, which is fatal to a set-aside, equitable relief claim. *Randall v. Bank of America N.A.*, 2015 WL

---

[10]   As that court explained:

> "Before one who has given a deed to secure his debt can have set aside in equity a sale by the creditor in exercise of the power conferred by the deed . . . [she] must pay or tender to the creditor the amount of principal and interest due . . . [n]either fraud nor poverty constitute an equitable excuse for failure to tender." *Hill v. Filsoof*, 274 Ga. App. 474, 475-76, 618 S.E.2d 12 (2005) (internal quotation marks omitted).

*Chen*, 2014 WL 806916 at *3.

11978463 at * 4-5 (N.D. Ga. Sept. 11, 2015); *Aning v. CitiMortgage, Inc.*, 2015 WL 11236540 at * 9 (N.D. Ga. June 29, 2015) (citing *White,* 597 F. App'x at 1015 ("Failure to make the proper loan payments or tender the amount due defeats any wrongful foreclosure or attempted wrongful foreclosure claims.").   Nor do they plead frustration of any post-foreclosure (*e.g.*, some sort of redemption) right.

That leaves their money damages claim.[11]   There is support in Georgia law for that.  *See Blanton v. Duru*, 247 Ga. App. 175, 178 (2000) ("In a wrongful foreclosure action, an injured party may seek damages for mental anguish in addition to cancellation of the foreclosure.").[12]  But

---

[11]   Actually, there is none, only an "all other relief" prayer.  Doc. 1-1 at 15.  But the Court is construing their pleadings liberally.

[12]  *See also Curl v. First Federal Sav. & Loan Ass'n of Gainesville*, 243 Ga. 842, 843 (1979) (an injured mortgagor may wait until the alleged wrongful foreclosure is completed, and sue in the alternative, for cancellation of the sale or damages, including mental pain and suffering and punitive damages); *LSREF2 Baron, LLC v. Alexander SRP Apartments, LLC*, 17 F. Supp. 3d 1289, 1313 (N.D. Ga. 2014) (mortgagor's damages are limited to the difference between the fair market value of property at time of sale and what the sale actually brought in, and such damages award would go towards reducing mortgagor's deficiency on note); *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1134 (11th Cir. 2014) ("Under Georgia law, to 'recover damages for a wrongful attempted foreclosure[, the plaintiff must prove] a knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition, and that damages were sustained as a direct result of this publication.' *Aetna Fin. Co. v. Culpepper*, 171 Ga. App. 315, 320 S.E.2d 228, 232 (1984).")); *Campbell v. Wells Fargo Bank, N.A.*, 2016 WL 6496458 at * 11 (N.D. Ga. Oct. 6, 2016) ("In conclusion, even if a breach of contract were shown in this instance based upon an alleged failure to strictly comply with the HUD regulations, Plaintiff Campbell has not met her burden of establishing that the

"a borrower may not withhold mortgage payments, even when there is a good faith dispute as to the amount owed.  If a *bona fide* controversy exists as to the liability for the additional amount, borrowers are obligated to pay the monthly sum they admittedly owed under the promissory note."  3 GA. REAL ESTATE LAW & PROC. § 21:115 (citing *Rourk v. Bank of American Nat. Ass'n*, 587 F. App'x 597, 600 (11th Cir. 2014)).

*Rourk* held that a borrower's knowing failure to continue making mortgage payments was fatal to her breach of contract and RESPA claims.  *Rourk*, 587 F. App'x at 600; *see also Moody Nat'l RI Atlanta H, LLC v. RLJ III Fin. Atlanta, LLC*, 2010 WL 163296 at * 9 (N.D. Ga. Jan. 14, 2010) (rejecting plaintiffs' argument that defendant's demand of default interest caused and excused their nonperformance in not making a timely payment; plaintiffs "took a calculated risk by not making a timely payment, knowing that doing so was a breach of the Note");

---

alleged breach resulted in damages that would not have occurred but for the breach."); *First Union Nat. Bank of Georgia v. Cook*, 223 Ga. App. 374 (1996) (punitive damages and attorney fees awardable against lender who foreclosed on property notwithstanding its knowledge that the security deed had been marked "paid"), *overruled in part on other grounds*, *Golden Peanut Co. v. Bass*, 249 Ga. App. 224 (2001), cited in 3 GA. REAL ESTATE LAW & PROCEDURE § 21:115 (7th ed. Apr. 2016).

*Russell v. Nationstar Mortgage, LLC*, 2015 WL 5029346 at * 7 (S.D. Fla. Aug. 26, 2015).

Here, the plaintiffs conspicuously fail to say what they did about their mortgage payments to CMI. Doc. 1-1. They do plead, however, that in 2013 CMI (via "Citimortgage") declared them in default for nonpayment and demanded nothing less than full payment of the loan. *Id.* at 4. They rest on their complaint that CMI "failed to make payment arrangements with" them, but from their surrounding allegations it's clear they mean that CMI *refused* "payment arrangements" in 2016, long after their *2013* default. That refusal was CMI's undisputed contractual right; the loan document itself mandated payment and could only be *voluntarily* forgiven, reduced, or otherwise modified. Plaintiffs point to *no* legal obligation breached by CMI's refusal to play ball with them. Finally, their own exhibits document their failure to make payments -- thus neutralizing their wrongful foreclosure claim outright.

### D. Fraud

The McGees generically accuse the defendants of attempting to "perpetrate a fraud, and wrongfully foreclose upon" their property. Doc. 1-1 at 4. But their only "fraud" facts are that the defendants failed to

give them proper *statutory* notice of default, foreclosure sale, and the foreclosure ad that they ran in the local paper. *Id.* They have not pled that CMI represented something to them, they reasonably relied on it, yet CMI did something else -- to their legal detriment.

Hence, their fraud claim fails because CMI was statutorily obligated to give them notice, the notice statute itself supplied CMI's "representation" that it would do something (give them notice) and the mere failure to uphold that statutory obligation cannot (by merely alleging fraud) be transformed into a stepped-up, second-bite remedy (*i.e.*, not only a wrongful foreclosure claim, but also a fraud claim) absent some additional representation on which the plaintiffs relied, or perhaps a fiduciary duty imposed,[13] which plaintiffs simply have not alleged.[14]

### E.  Fed. R. Civ. P. 4(m)

The McGees had 90 days from the date of removal to serve SPH. *Rogers v. Amalgamated Transit Union Local 689*, 98 F. Supp. 3d 1, 6

---

[13]   It's black letter law that lenders owe no fiduciary duty to borrowers. *Kin Chun Chung v. JPMorgan Chase Bank, N.A.*, 975 F. Supp. 2d 1333, 1346 (N.D. Ga. 2013).

[14]   Plaintiffs also raise a Due Process claim.  Doc. 1-1 at 13.  However, "a private foreclosure sale does not implicate the Due Process Clause because it does not involve state action. *See Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 358-60 (5th Cir.1997) (finding no due process violation in private foreclosure sale because there was no state action nexus)." *Desouza*, 572 F. App'x at 723 n. 2.

(D.D.C. 2015); 4B Wright & Miller, Fed. Prac. & Proc. § 1137 (4th ed. 2017) ("In removed cases, the Rule 4(m) time period starts to run upon removal to the federal district court, not the date the action was originated in state court[.]").  There is no record evidence documenting service.  Within 14 days of the date this ruling is served, they must show cause why their case against SPH should not be dismissed without prejudice.

## III.  CONCLUSION

CitiMortgage, Inc.'s Motion to Dismiss (doc. 16) should be **GRANTED** and plaintiffs' Complaint against it should be **DISMISSED WITH PREJUDICE**.  Doc. 16.  Within 14 days of the date this ruling is served, plaintiffs must show cause why their case against Shapiro, Pendergast & Hasty LLP should not be **DISMISSED WITHOUT PREJUDICE** per Rule 4(m).

Meanwhile, the Court submits this Report and Recommendation (R&R) to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned

"Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 28th day of March, 2017.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

24